UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

    Plaintiff,

                                                   CASE NO.: 21-cr-00643-CKK

v.

WILLARD BOSTIC,

    Defendant.

## DEFENDANT WILLARD BOSTIC'S SENTENCING MEMORANDUM

### I.    SUMMARY

Mr. Willard Bostic pled guilty to one misdemeanor count of parading or demonstrating without a permit, in violation of 40 USC § 5104(e)(2)(G). The penalties for this offense range from no incarceration up to a maximum penalty of six months of incarceration. 40 USC § 5104(e)(2)(G). There are no sentencing guidelines applicable to this offense.

Probation recommends no incarceration and a year of probation. (Mr. Bostic's Sentencing Recommendation, Case 121-cr-00643-CKK, ECF No. 86, Page 1, Filed 01/23/23). The government requests 90 days home detention and three years of probation, *inter alia*. (Government's Sentencing Memorandum, Case 121-cr-00643-CKK, ECF No 94, Filed 02/22/23, p. 1). Mr. Bostic respectfully submits that Probation's recommendation is appropriate, especially in light of the applicable statutory sentencing factors, discussed further below.

**II.    APPLICATION OF THE 18 U.S.C. 3553(a) SENTENCING FACTORS TO MR. BOSTIC**

**A.    Nature and Circumstances of the Offense and the Need for the Sentence Imposed to Reflect the Seriousness of the Offense**

On January 6, 2021, Mr. Bostic attended the "Save America Rally," near the Ellipse, with his two adult daughters, Meghan Rutlege and Karegan Bostic. (Statement of Offense, ECF. No. 68, p. 3). After the rally, they marched to the US Capitol because they believed former President was going speak there. (*Id*. at 3). After they arrived on the Capitol grounds, they worked their way toward the Capitol building. Mr. Bostic and his daughters entered the Senate Wing doors at approximately 3:12 pm and quickly exited the building approximately four minutes later at 3:16 pm. (Sentencing Recommendation, ECF No. 86, p. 2).

As the following argument will demonstrate, the nature and circumstances of the offense to which Mr. Bostic pled guilty weigh in favor of no incarceration.

First, Mr. Bostic did not engage in any violence or damage any property or encourage others to do so.

While the government argues that "the absence of violent or destructive acts is not a mitigating factor" in a misdemeanor case, the government cites no case law to support this assertion. (Government's Sentencing Memorandum, ECF No. 94, p. 12). The very first factor sentencing courts are to consider, according to Congress, is the "nature and circumstances" of an offense. 18 USC § 3553(a)(1). Whether violence is a part of the nature and circumstances of an offense is a particularly relevant to factor to be considered by the court in determining an appropriate sentence, just as the absence of violence would be. Ignoring the fact that Mr. Bostic did not engage in any violence on January 6, fails to take into account a critical fact that—Mr. Bostic's refusal to engage in violence or destructive behavior distinguishes him from those who had neither the sense nor the will to refrain from do so. Moreover, committing a non-violent

offense is a well-recognized mitigating factor that routinely serves as the basis for a downward variance from the applicable guidelines in felony cases. *See, e.g.*, *United States v. Price*, 496 F.Supp. 3d 83, 90-91 (2020) (life offense reduced to time served (13 years) based on extraordinary and compelling reasons and analysis of 3553 factors, which included, *inter alia*, non-violent nature of the offense of conviction and defendant's positive record in prison of not engaging in violence); *United States v. Johnson*, 2022 US Dist LEXIS 129168, pp. *34-35 (reduction of sentence in compassionate release case justified by non-violent nature of the defendant's drug offense and non-violent prior convictions). Accordingly, Mr. Bostic submits that his non-violent actions on January 6 warrant a sentence of with no incarceration.

Second, Mr. Bostic has accepted full responsibility for his actions by pleading guilty to the instant offense. He truly regrets entering the Capitol. While he was only inside the Capitol for less than four minutes, he knew he had made a mistake as soon as he walked through the doorway and saw others had broken a table. Immediately, he gathered up his daughters, met up with his friend, walked back to his car, and drove to his home in Virginia.

Arguing for a sentence that includes home detention, the government submits that Mr. Bostic should have left the Capitol grounds before he entered the Capitol, based on what was going on outside the Capitol. (Government's Sentencing Memorandum, ECF No. 94, p. 12). The government is right. Mr. Bostic should have known better and left before he ever entered the Capitol. He knows this is true and regrets not doing so. He simply got caught up in gawking at the spectacle that day and figured that, since he was not hurting anybody or anything, he could be to witness to the events. He now understands that he was wrong for being at the Capitol that day, in the midst of a riot, and deeply regrets not preventing his daughters from being at the Capitol.

3

Indeed, it is Mr. Bostic's recognition of this fact that precipitated his guilty plea to the instant offense.

In support of home detention, the government also argues that Mr. Bostic has shown "no remorse for his actions at the Capitol" and "suggested to his friend that people should storm the Capitol again in protest of the alleged acts by President Biden." (Government's Sentencing Memorandum, ECF No. 94, p. 12). Both assertions are wrong.

Mr. Bostic has accepted responsibility for his actions by pleading guilty and expressed genuine remorse for not only his involvement in this case, but also for not preventing his daughters from going to the Capitol and getting involved in this case, as discussed above.

The government's other suggestion—that Mr. Bostic thinks people should storm the Capitol again—deserves a brief explanation because it is just the opposite of what Mr. Bostic truly believes. The government's whole argument is premised on a text Mr. Bostic received from a friend on January 9, 2021, in which his friend suggested that somebody should send the media evidence of the crimes contained on Hunter Biden's laptop. Mr. Bostic sarcastically responds, "I think people should storm the capital [sic]."

Without context, Mr. Bostic's text could be construed as unrepentant, especially after the events of January 6. In reality, however, Mr. Bostic's remark was actually a reflection of his frustration with the government and media for not taking the matter of Hunter Biden's laptop more seriously. In an attempt express his frustration, Mr. Bostic sarcastically and dismissively suggests, "I think people should storm the capital [sic]." But what Mr. Bostic actually meant was that it was a hopeless endeavor to get the government and the media to take the matter of Hunter Biden's laptop more seriously, just as it was a hopeless endeavor for a largely unarmed crowd of people to believe they were going to be allowed to take over Congress or the United States government on

January 6. When this text is viewed in the proper context, which includes the fact that Mr. Bostic worked in Special Operations for the United States military and knows a thing or two about the type of force it actually takes to overthrow a government, it is clear that Mr. Bostic's text should not be taken literally and that he actually thinks it was ridiculous for those engaged in violence on January 6 to think for a moment that they were going to succeed by force. Mr. Bostic does not condone the attack on the Capitol on January 6 and never wants to see it happen again.

Finally, Mr. Bostic would like the Court to know that the reason he was in Washington, DC, that day was twofold: (1) to engage in a lawful protest of the certification of the election that Mr. Bostic sincerely believed was stolen, based on the representations of former President Trump; and, (2) to protect his two daughters in the city, as they were intent on attending the "Save America Rally." If they did not want to attend the rally, Mr. Bostic probably would not have gone on his own. Of course, he did go, but never with the intention of hurting anybody or damaging any property.

Based on the above, Mr. Bostic submits that the nature and circumstances of the offense and seriousness of the offense weigh in favor of a sentence of probation without incarceration.

**B.      Mr. Bostic's History and Characteristics**

Mr. Bostic is a 57-year-old married father of five children who has never before been in trouble with the law. He dedicated his career to serving the United States by enlisting in the United States Navy. For nearly 22 years, he served his country honorably before retiring with the rank of Chief. During his time in the Navy, Mr. Bostic qualified for and served in an elite division dedicated to special operations. There, he risked his life and suffered lasting damage to his mind and body, for which he received numerous awards, medals, and recognition. (Presentence

Investigation Report, ECF No. 86, p. 1; *see also*, military service records provided directly to the US Probation and Pretrial Services to supplement the PSR).

Based on Mr. Bostic's clean criminal history prior to this case, his dedication to his wife and family, and his extraordinary service to the United States as member of the armed forces, Counsel for Mr. Bostic respectfully submits that his history and characteristics militate in favor of a sentence of probation without incarceration. *United States v. Howe*, 543 F.3d 128 (3d Cir. 2008) (district court did not clearly err in deeming the offense—characterized by the government as a two-year campaign to cover up a six-figure fraud on the Air Force—an "isolated mistake" in the context of defendant's entire life, which was otherwise upstanding and included military service, devotion to family, community, and church, and sentencing to home confinement and probation); *United States v Gardellini*, 545 F3d 1089, 1093 (2008) (affirming sentence of probation and fine in a felony tax offense case where guidelines called for prison, citing *Howe* approvingly in footnote 5).

C. **The Need for the Sentence to Promote Respect for the Law, Just Punishment, Adequate Deterrence, and Protection of the Public from Further Crimes of the Defendant**

A probationary sentence without any incarceration is sufficient, but not greater than necessary, to accomplish the goals of sentencing listed above in Mr. Bostic's case. While on probation, Mr. Bostic undoubtedly will be required to abide by several conditions that severely restrict his liberty, which is not an insignificant form of punishment and one that also promotes respect for the law, provides just punishment in Mr. Bostic's case, and offers some measure of protection of the public, as Mr. Bostic would continue to be under the watchful eye and supervision of US Probation. *See Gall v. United States*, 552 US 38, 43, 47 (2007) (affirming sentence of probation where sentencing guidelines recommended 30-37 months of imprisonment, in part,

6

because the district court correctly assessed "that probation, rather than 'an act of leniency,' is a 'substantial restriction of freedom'").

Mr. Bostic need not be incarcerated to protect the public. First, Mr. Bostic's role in this offense was non-violent. Second, he has demonstrated throughout the pendency of this case that he is able to conform his behavior to the law while on pretrial release. Moreover, Mr. Bostic has proven over the last 57 years that he is capable of being a law-abiding citizen and this is his first brush with the law. Being a first-time offender, he is statistically less likely to reoffend, especially since he has accepted responsibility for his actions in an extraordinary way. (*See* Sentencing Commission's report, Recidivism and the "First Offender" (May 2004), available at http://www.ussc.gov/publicat/Recidivism_FirstOffender.pdf, which notes that:

> The analysis [of empirical data on re-offending] delineates recidivism risk for offenders with minimal prior criminal history and shows that the risk is lowest for offenders with the least experience in the criminal justice system. Offenders with zero criminal history points have lower recidivism rates than offenders with one or more criminal history points. Even among offenders with zero criminal history points, offenders who have never been arrested have the lowest recidivism risk of all.

All of this is further evidence that a sentence that includes incarceration is not necessary to protect the public from further crimes or to specifically deter Mr. Bostic from committing any further crimes.

To the extent that the Court or the government is concerned that a lenient sentence threatens to promote disrespect for the law and fails to provide adequate general deterrence to others who might consider assaulting the Capitol, the fact that countless other defendants have been sentenced to terms of incarceration, including significant prison sentences in the more egregious cases, offsets this concern. *See Gall v. United States*, 552 US 38, 52 (2007).

**D.**     **The Need to Avoid Unwarranted Sentencing Disparities**

Counsel for Mr. Bostic recognizes that the Court is in the best position to ensure that there are no unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. However, few defendants are likely to possess the same history and characteristics as Mr. Bostic, given his extraordinary service to his country for nearly 22 years. When this factor is considered along with the fact that Mr. Bostic has a clean record, did not engage in any violence that day, and was only briefly inside the Capitol, it is evident that a probationary sentence is warranted in his case.

### III.     CONCLUSION

Based on the above, Mr. Bostic respectfully submits a probationary sentence is a sufficient sentence to accomplish the goals of sentencing under 18 U.S.C. § 3553(a).

Respectfully submitted,

Dated: 03/03/2023

*/s/ Gary K. Springstead*
Gary K. Springstead (P59726)
SPRINGSTEAD BARTISH BORGULA & LYNCH, PLLC
Attorney for the Defendant, Mr. Bostic
60 Monroe Center St., NW #500
Grand Rapids, MI 49503
(231) 924-8700
gary@sbbllaw.com